163    661
·169    ⁵395

BENTON COUNTY et al., Appellants, v. MORGAN et al.

In Banc, June 18, 1901.

1. **Mortgage:** SCHOOL FUND: JURISDICTION OF COUNTY COURT: CONSTITUTIONAL LAW. Constitution 1875, article 6, section 1, provides that the judicial power shall be vested in county and other courts, and section 36 prescribes that in each county there shall be a county court which shall be a court of record, and shall have jurisdiction to transact all county and such other business as may be prescribed by law. *Held*, that under these provisions, Revised Statutes 1899, section 9835, which by its retention in the revision of the statutes after the adoption of the Constitution, amounted to a re-enactment— empowering the county court, whenever any part of a mortgage debt containing a power of sale became payable, to make an order to the sheriff commanding him to levy on the property described in the mortgage and a copy of such order, duly certified, being delivered to the sheriff, shall have the effect of a *fieri facias* on a judgment of foreclosure by the circuit court, is valid, the Legislature having power to confer such power on the county court.

2. ————: ————: ORDER OF COUNTY COURT: AUTHORITY OF SHERIFF TO SELL MORTGAGED PROPERTY. Revised Statutes 1899, section 9833, provides the form of a school-fund mortgage, and stipulates that such mortgage shall contain a provision that on default the sheriff, on giving a required notice, without suit on the mortgage, shall sell all the premises or a part thereof to satisfy the debt; and section 9835 prescribes that, whenever any part of such mortgage or interest becomes payable, the county court may issue an order to the sheriff, commanding him to levy on the property described in the mortgage; and a copy of such order, duly certified, being delivered to the sheriff, shall have the effect of a *fieri facias* on a judgment of foreclosure by the circuit court. *Held*, that a sale of land by the sheriff under a school-fund mortgage, without a certified copy of the county court's order for such sale is void, though such order had been obtained, and entered of record.

3. ————: ————: SALE OF MORTGAGED PROPERTY: FAILURE TO NOTIFY MORTGAGOR. Failure of the sheriff to notify a school-fund mort-

gagor, he being a non-resident of the county, of the intended sale of the property after default, is a mere irregularity, not vitiating the sale.

4. **Conveyance:** SETTING ASIDE: ADEQUATE REMEDY AT LAW. Where the petition in a suit to set aside a conveyance made by the sheriff showed that the conveyance was absolutely void, a demurrer to the petition was properly sustained, as the complainant had an adequate remedy at law by ejectment.

5. **Sufficiency of Petition:** DEMURRER: EXCEPTION. When a party successfully demurs to a petition and plaintiff refuses to plead further, whereupon judgment goes on the demurrer, no necessity exists to save exception to the ruling of the court, since the demurrer will keep without (Following Spears v. Bond, 79 Mo. 467, and subsequent cases).

Appeal from Benton Circuit Court.—*Hon. W. W. Graves,* Judge.

AFFIRMED.

D. Brunges, Charles E. Yeater and T. C. Owen for appellants.

(1) Sections 9833 and 9835, Revised Statutes 1899, are not unconstitutional and void. Under section 36 of article 6 of the Constitution, county courts are made courts of record and have jurisdiction to transact all county and such other business as may be prescribed by law. This court has held that county courts may act both in a judicial and an administrative capacity, and if it be held that the order of sale, and the levy and sale by the sheriff thereunder, provided by section 9835, is the exercise of a judicial power it was, notwithstanding, within the power of the Legislature to prescribe this power. State ex rel. v. Elken, 130 Mo. 90; Sears v. Stone Co., 105 Mo. 236. (2) The powers contained in sections 9833 and 9835 were first conferred, respectively, in 1831 and 1852-3,

Benton County v. Morgan.

before provisions for the modern deed of trust were enacted, for the purpose of securing a speedy foreclosure of school mortgages. In substance, they now confer practically the same powers on the county court and sheriff as are conveyed by the statutes upon trustees in deeds of trusts. Secs. 4343, 4355, 4356, 4357, R. S. 1899. (3) The petition alleges that no order was made by the county court to the sheriff, reciting the debt and interest to be received, and commanding him to levy the same with costs, and no certified copy of any order whatever was ever delivered to the sheriff, and he therefore had no execution or warrant under which to sell. Sec. 9835, R. S. 1899; Honaker v. Skough, 55 Mo. 473; Jones v. Mack, 53 Mo. 150; George v. Middough, 62 Mo. 551; Burton v. Deleplain, 25 Mo. App. 376. (4) The sale was accompanied with irregularities which, taken in connection with the gross inadequacy of the bid, make it wholly invalid, although such irregularities standing alone might be harmless. Holdsworth v. Shannon, 113 Mo. 520; Knoop v. Kelsey, 121 Mo. 648; Nelson v. Brown, 23 Mo. 21; Beadle v. Mead, 81 Mo. 308; Hardware Co. v. Building Co., 132 Mo. 454; 17 Am. and Eng. Ency. Law (2 Ed.), pp. 1002-3. (5) The sheriff should have served written notice on the mortgagor reciting an order of sale and the term to which the same was returnable, because of the fact that the mortgagor lived in another county. Sec. 3199, R. S. 1899; Young v. Schofield, 132 Mo. 664.

*W. S. Jackson and V. V. Morgan* for respondents.

(1) (a) The Legislature in remodelling the school laws since the adoption of the present Constitution, limiting the powers of county courts, cut out a part of the old law and overlooked section 9835, and the same as it now stands must be construed in connection with the entire code of laws, and

when so construed it simply has the force and effect of saying that the county court as the agent of the county having in charge the school funds of the county, may by order of record direct a sale under a school mortgage, if in their judgment a sale should be had. Const., Art. 6, sec. 36; R. S. 1899, art. 5; Snyder v. Railroad, 131 Mo. 579; Grant v. Huston, 105 Mo. 101. (b) There has been a legislative construction of the powers of the county court in these matters of sales under mortgages. In providing for county courts to loan sinking funds the Legislature provides for the kind of security and mortgage to be taken, and what order shall be made by the county court and how the mortgage shall be foreclosed. R. S. 1899, secs. 1801, 1802, 1803 and 1804. (c) Again the Supreme Court has held that the power to sell does not spring from any order of the county court, but from the mortgage itself, which is a judicial construction of the said law. Snyder v. Railroad, 131 Mo. 579; Grant v. Huston, 105 Mo. 101; Mann v. Best, 62 Mo. 795; Wallers v. Senf, 115 Mo. 531; (d) The circuit court alone is the forum in which to try fore-closure proceedings and in which can be entered judgments of foreclosure. Ayers v. Heirs of Shannon, 5 Mo. 282; Lincoln Co. v. McLellan, 3 Mo. App. 312. (2) The order from the county court is simply a direction to the officer to execute the trust declared in the mortgage. Snyder v. Railroad, supra; Grant v. Huston, supra. (3) The law leaves it to the discretion of the sheriff in sales of this character, and the sheriff in this case is nothing more than a trustee in an ordinary deed of trust. This discretion has been clearly recognized in a school mortgage case. Cole Co. v. Madden, 91 Mo. 615; Snyder v. Railroad, 131 Mo. 580. No fraud is charged upon the part of the sheriff and nothing is charged in the petition which would justify the conclusion that the discretion of the officer was not wisely exercised. It is not even charged that he knew the value of the lands sold.

SHERWOOD, J.—This equitable action was brought for the purpose of cancelling and setting aside a conveyance made by the sheriff to V. V. Morgan, the purchaser at a sale made by that officer when selling certain land under an instrument commonly called a school mortgage, default having been made in the payment of the bond secured by such mortgage, plaintiff McPherson being the mortgagor.

It was sought, also, in the petition, to set aside and cancel a deed from V. V. Morgan to his brother, John E. Morgan, Jr., whereby was conveyed to the latter, an undivided one-half interest in the land purchased. ·The petition is the following:

"(1) The plaintiff, the county of Benton, by and through D. Brunjes, the prosecuting attorney of said county, together with Charles E. Yeater, associate counsel, and the plaintiff, H. C. McPherson, by and through T. C. Owen, his attorney, for their amended petition herein, state that the said county of Benton was and now is a political subdivision of the State of Missouri, and, as such, is a municipal corporation entitled to sue and be sued in all the courts of the State.

· "(2) And plaintiffs state that on February 6, 1892, the plaintiff, H. C. McPherson, borrowed from the said county of Benton the sum of $125.40, of which $40.40 was loaned from the township school fund of township forty, range twenty-one, and of which $85 was loaned from the township school fund of township thirty-nine, range twenty-two, and for which he gave his respective bonds, dated February 6, 1892, and due January 1, 1893, with interest from date at the rate of eight per cent per annum, in the manner and form required by law.

"(3) And plaintiffs state that on said February 6, 1892, the said H. C. McPherson and Margaret McPherson, his wife, duly executed and delivered to said county a school fund mortgage in the manner provided by law, to secure the aforesaid loans, belonging to the said township school funds, and by such

mortgage conveyed in fee to the said county of Benton the southeast quarter of the southeast quarter of section seventeen, and the west half of the northeast quarter, and the northeast quarter of the northeast quarter of section twenty, in township thirty-nine and range twenty in Benton county, Missouri, which said mortgage as provided by section 8057, Revised Statutes of 1889, recited the said bonds and contained a condition that if default should be made in the payment of the principal or interest, or any part thereof, at the time when they should severally become due and payable, according to the tenor and effect of the bonds recited, the sheriff of the county might, upon giving notice of the time and place of sale by publication for thirty days in some newspaper published in the county, if there be one published, and if not by six printed or written handbills, put up in different public places in the county, proceed and sell the mortgaged premises, or any part thereof, to satisfy the principal and interest, and make an absolute conveyance thereof in fee to the purchaser, which should be as effectual to all intents and purposes as if such sale and conveyance were made by virtue of a judgment of a court of competent jurisdiction foreclosing the mortgage and that the said school fund mortgage is duly recorded in book 31 at page 282 in the office of the recorder of deeds of said county of Benton.

"(4)    And plaintiffs further state that on the seventh day of March, 1899, the said bonds for the said school fund loans were due and unpaid, and the county court of said Benton county made an order reciting the debt and interest to be received and ordering that judgment therefor be entered against said principal and the sureties on his said bond and that an order of sale of the property aforesaid be made to satisfy the same, and the plaintiffs aver that the said county court did not make an order to the sheriff, reciting the debt and interest

to be received, and commanding him to levy the same with costs upon the property conveyed by said mortgage as described therein; and plaintiffs say that a copy of the order which was actually made by the county court as aforesaid, duly certified, was never made or delivered to A. F. Prussing, the duly elected, qualified and acting sheriff of said county, and further say that no copy of an order as required by section 8059, Revised Statutes of 1889, was ever duly certified or delivered to the said sheriff, and also say that no copy of any order whatsoever of said court in the premises was ever certified or delivered to the said sheriff, and that the said sheriff had no legal warrant or authority for the sale of said property herein described.

"(5)    And plaintiffs say that on the nineteenth day of April, 1899, the said A. F. Prussing, sheriff, after having advertised said property for thirty days in a newspaper published in said county, for sale on said day, exposed the property for sale at the courthouse door in said county, and notwithstanding said property was susceptible of division, in violation of the law and of his duty in the premises, offered the whole of said property for sale, without the request of said mortgagor in mass and that the defendant V. V. Morgan, an attorney at law, bid for the same in the sum of fifty-two dollars, and the same was struck off to said defendant at the said price and sum, and thereafter the said sheriff conveyed the same to the said V. V. Morgan by his deed recorded in book 71 at page 416 in the office of the recorder of deeds of the said county.

"(6)    And plaintiffs aver that the said sheriff did not, as required by law, cause a notice in writing to be served on the said H. C. McPherson, plaintiff, the mortgagor aforesaid, stating the fact of the making of an order for the sale aforesaid directed to the sheriff of Benton county, and to what term of

court said order, as and for such execution, was returnable, notwithstanding at the time of said sale the said H. C. McPherson was a resident of Jackson county, Missouri, and the real estate aforesaid was situated in Benton county, Missouri, and plaintiffs aver that no officer or person for said Benton county caused said notice to be served as required by law.

"(7) And plaintiffs state that the said county did not authorize an agent to bid at the said sale for the protection of school funds as aforesaid, which the said sheriff, A. F. Prussing, well knew on the said day of sale and at the time of the sale.

"(8) Plaintiffs further aver that on said day of sale and ever since the said property conveyed in said mortgage as aforesaid was of the value of eight hundred dollars and further says that the said bid was for a sum grossly inadequate to the true value of said property, and that the sheriff and the said defendant bidding thereon well knew that the property was sacrificed at such bid, and plaintiffs say that the said sheriff violated his duty, first, in exposing said property for sale without warrant of law in the manner aforesaid, and next in not then and there stopping said sale for the protection of the school fund and said plaintiff McPherson, and reporting to the said county court that said property was not sold for the want of bidders.

"(9) And plaintiffs aver that defendant John E. Morgan, Jr., is the deputy county clerk, under his brother, Walter Morgan, county clerk of said county, and is also a brother of defendant, V. V. Morgan and that said John E. Morgan, Jr., was also present at the said sale and was a bidder on the said property and well knew all the facts aforesaid, and with a full knowledge thereof the said John E. Morgan, Jr., assumed a half interest in the said bid with his said brother and that pursuant thereto the said V. V. Morgan conveyed to said John E. Morgan, Jr., an undivided one-half interest in the said real es-

tate, and that said conveyance is duly recorded in book 5 at page 204 of the office of the recorder of deeds of said county.

"(10) And plaintiffs also allege that at the time aforesaid of said sale the said V. V. Morgan, defendant, was employed by the said sheriff to make his deeds and conveyances, and was also employed by him as a clerk to keep his books of account as sheriff.

"(11) And plaintiffs offer, on the order of the court, to pay to defendants or to pay to the clerk of the court for them, the amount of the said bid, the said fifty-two dollars, and pray the court to enter its order and decree declaring the said pretended sale by said sheriff to the said V. V. Morgan to be null and void, and cancelling and annulling the said sheriff's deed to defendant V. V. Morgan and the said deed from V. V. Morgan to John E. Morgan, Jr., to the said property, and pray the court to enter such further orders and decrees as in equity and good conscience they shall be entitled to."

Defendants demurred to the petition alleging among other as grounds therefor:

"I. Because the petition fails to state facts sufficient to constitute a cause of action.

"II. Because the petition fails to show that the county court of Benton county ever authorized or directed said suit to be instituted.

"III. Because the petition shows upon its face that plaintiff Benton county had a complete and adequate legal remedy and the petition fails to allege that the plaintiff county has been damaged by the matters set out therein so as to entitle them to maintain a suit in equity.

"IV. Because the petition shows upon the face that the county court of Benton county has no constitutional right to make any order upon the sheriff to levy upon and sell the property described in the petition, and any such order even if

made would not (when a certified copy thereof was served upon the sheriff) have the force and effect of a *fieri facias* or give him any power or authority to levy upon or sell the same."

The demurrants were successful, the petition being adjudged insufficient; and plaintiffs refusing to plead further, final judgment went on the demurrer, and directing the petition to be dismissed. The record recites that plaintiffs "excepted to such action of the court," but no such exception was necessary, as a demurrer will keep without. [Spears v. Bond, 79 Mo. 467, and subseq. cas.]

Defendants have analyzed very well the contents of the petition as follows:

"The petition recites the giving of a school fund mortgage and bond by plaintiff McPherson in due form, that the bond fell due, and then recites the sale to defendant V. V. Morgan for an inadequate price, alleging the property to be of the value of eight hundred dollars and the selling price to be fifty-two dollars.

"As irregularities in the sale the petition charges: First. That the county court made an order reciting the debt and interest to be received and ordering judgment therefor to be entered against McPherson and his sureties on his bond and also ordering a sale, but that the county court did not make an order to the sheriff commanding him to levy the debt and interest with costs on the property and did not make out and deliver a copy of such order aforesaid as required by section 8059, Revised Statutes 1889, now section 9835, Revised Statutes 1899. Second. That the property was susceptible of division and the sheriff sold it in one body. Third. That the sheriff did not give notice in writing to defendant H. C. McPherson, the mortgagor, stating the fact of the order of sale aforesaid, the said McPherson being a resident of Jackson county, Missouri. Fourth. That the county did not auth-

orize an agent to be at such sale for the protection of the school fund. Fifth. That V. V. Morgan the purchaser of the land was at the time employed by the sheriff to make or write his deeds of conveyances and to keep his books of account as sheriff; that V. V. Morgan sold and conveyed an undivided one-half interest of the land to his brother John E. Morgan, Jr., who was then county clerk and had been a bidder at the sale and knew all the facts stated in the petition.

"The foregoing constitute all of the irregularities charged in the petition and the contention of plaintiff is that these irregularities coupled with what they allege was an inadequate price are sufficient to invalidate the sale.

"It will be noticed that the petition pleads that the county court did in fact make an order of sale but that a certified copy of such order was not delivered to the sheriff. No fraud is pleaded either as against the defendants or the sheriff. In plaintiffs record and brief is found both the original petition and the amended petition, in the former they allege the land to be worth four hundred dollars, in the latter eight hundred dollars.

"Plaintiffs contend that the county court should have ordered judgment stating amount of debt and interest due upon the mortgage and made an order of sale; that the county court should make a further order to the sheriff to sell said property reciting the finding and judgment of the court as to the debt and interest and directing the sheriff to levy upon the property described in the mortgage and judgment and to sell the same to satisfy the said judgment. Second. That the certified copy of this last order should be delivered to the sheriff, which would have the effect of a *fieri facias* in his hands; that then it became necessary to give the non-resident due notice as in sales under execution."

Their own contention defendants state in the manner fol-

lowing: "That the county court have no right to render any judgment and that therefore no order or certified copy of an order from the county court could or would have the effect of a *fieri facias* in the hands of the sheriff; that the county court is merely the agent of the county having charge of the school fund; that like any other beneficiary they may request the sale of mortgaged property; that they did so request the sale when they made the order of sale as pleaded in the petition; that the sale having been requested by the county court, the agents in charge of the school fund, the sheriff had the right to sell and the sale was regular and mere inadequacy of price will not invalidate it."

Several questions are presented by the demurrer to the petition, especially by that portion of the demurrer which charges that the petition fails to state facts, etc.

Section 9835, Revised Statutes 1899, has been on our statute books ever since 1852, and is to be found in 2 Statutes 1855, p. 1425, and is section 30, and reads now as it did then, which is:

"Whenever the principal and interest, or any part thereof, secured by mortgage containing a power to sell, shall become due and payable, the county court may make an order to the sheriff, reciting the debt and interest to be received, and commanding him to levy the same with costs, upon the property conveyed by said mortgage, which shall be described as in the mortgage; and a copy of such order, duly certified, being delivered to the sheriff, shall have the effect of a *fieri facias* on a judgment of foreclosure by the circuit court, and shall be proceeded with accordingly."

Of this section defendants assert that the Legislature in revising the school law, since the adoption of the present Constitution, cut out a part of the old law and overlooked the quoted section, and that the county courts, under the present Consti-

tution, had no power to enter judgments as provided for in the Acts of 1852, section 29, and no power to make any order, a certified copy of which would have the force and effect of a *fi fa* issued upon a judgment of foreclosure in the circuit court.

These postulates of defendants will be examined first in the light of the Constitutions of 1820, 1865, and of the present instrument.

Section 1 of article 5 of the Constitution of 1820, provides: "Section 1. The judicial power as to matters of law and equity, shall be vested in a Supreme Court [in a 'Chancellor'], in 'Circuit Courts,' and in such inferior tribunals as the General Assembly may, from time to time, ordain and establish."

And section 12 of the same article contains a provision that: "Inferior tribunals shall be established in each county for the transaction of all county business, for appointing guardians, for granting letters testamentary, and of administration, and for settling the accounts of executors, administrators and guardians."

Section 1 of article 6 of the Constitution of 1865, is, omitting the words in brackets, precisely like section 1 of article 5 of the Constitution of 1855.

Section 23 of article 6, aforesaid, provides that: "Inferior tribunals, to be known as county courts, shall be established in each county, for the transaction of all county business. In such courts, or in such other tribunals, inferior to the circuit courts as the General Assembly may establish, shall be vested the jurisdiction of all matters appertaining to probate business, to granting letters testamentary and of administration, to settling the accounts of executors, administrators and guardians, and to the appointment of guardians and such other jurisdiction as may be conferred by law."

Vol 163 mo—43

Section 1 of article 6 of the document now in use is couched in these words: "The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts."

And section 36 of that article says: "In each county there shall be a county court, which shall be a court of record, and shall have jurisdiction to transact all county and such other business as may be prescribed by law. The court shall consist of one or more judges, not exceeding three, of whom the probate judge may be one, as may be provided by law."

Under the Constitutions of 1820 and 1865, respectively, it would seem that the Legislature had authority to enact such a section as that now under discussion; but if this were not so, that body certainly had that power of enactment under the Constitution of 1875. Section 1 of article 6, aforesaid, evidently confers judicial power on the county courts of this State, and section 36, supra, says, that in each county such a court "shall have jurisdiction to transact all county and such other business as may be prescribed by law." Under such a broad provision, there is no room for reasonable doubt as to the power of the Legislature to enact such a section as 9835; and their revision of the statutes, after the Constitution of 1875 went into force, amounted to a re-enactment of that section, and made it valid, if invalid before.

This view as to the power of the county court after the re-enactment of section 9835, is similar to that taken by this court in State ex rel. Lionberger v. Tolle, 71 Mo. loc. cit. 648, in which section 27 of the same article came under review, which section declares: "The circuit court of St. Louis county shall be composed of five judges, and such additional number as the General Assembly may, from time to time,

provide. Each of such judges shall sit separately for the trial of causes and the transaction of business in special term. The judges of said circuit court may sit in general term for the purpose of making rules of court, and for the transaction of such other business as may be provided by law, at such time as they may determine, but shall have no power to review any order, decision or proceeding of the court in special term."

And the Legislature passed a law (section 320, Revised Statutes 1879), which required the judges of the circuit courts in cities having over 100,000 inhabitants to award to the newspaper therein being the lowest bidder and having a designated circulation, the printing of all legal notices. And upon these provisions, constitutional and statutory, it was ruled that under the words *"such other business as may be provided by law,"* it was competent for the Legislature to provide that the judges of the circuit court of the city of St. Louis, should award the publication of all legal notices. That case, in its essential features, seems strongly resemblant of and decisive of this one.

Taking section 9835, then, as a valid law, did its provisions meet with compliance in the case at bar? It can not be affirmed that they did. It is immaterial about the judgment, for the county court was no longer authorized to enter a judgment; but it did have the power to make an order to the sheriff and a copy of such order duly certified being delivered to the sheriff, would have the effect of a *fieri facias* on a judgment of foreclosure.

*But no such order was certified or delivered to the sheriff;* this the petition in terms avers, so that it is clear that under that section the sheriff had no authority whatever to sell the land in question. It will not do to say, as is said by defendants, that such order being *entered of record would amount to a request* to the sheriff to sell. This would be to ignore and to disobey the plain words of the statute. As well might it be

said that if a beneficiary in a deed of trust should write a letter to his trustee requesting his trustee to sell, etc.; and having written the letter, should leave it lying on the desk where written; that *this* would amount to a *request* to his trustee *to sell*.

Nor will it do to say, as is said by defendants, that under the terms of the mortgage as provided for in section 8057, Revised Statutes 1889, the sheriff was authorized to sell *without* any order or request from the mortgagee. The statute does not say so, and no such construction will be given it. The *county court,* and not the *sheriff,* is the *guardian* of the *school fund.*

To hold that the sheriff, without any request from the mortgagee, could make such sale, and such sale would be valid, would give him powers far more enlarged than possessed by others in similar situations. The law, in such circumstances, will imply the necessity for a request to be made on the sheriff. And what the law will imply in a statute, becomes as much part and parcel of the enactment as if written therein. [Lemon v. Board, 108 Mo. 235, and subseq. cas.; Sutherland, Stat. Construc., sec. 334.]

Besides, section 8057, heretofore cited, and formerly section 22, Revised Statutes 1855, p. 1424, has now become section 9833, and section 8059 of the old law, formerly section 30, has become section 9835, already quoted. So that these two sections are to be taken together and construed together. Under such construction, while the sheriff may indeed sell the mortgaged premises on the occurrence of default, as stated in section 9833, yet he can not do so until and unless an order of the county court first be made upon him, etc., and a copy of such order duly certified has been delivered to him as required by section 9835. In short, the former section prescribes the terms and conditions upon which the mortgage shall

be drafted, and who shall make the sale; the latter section carefully prescribes upon what conditions, the officer authorized to make the sale may make it. Lacking the strict observance of such precedent conditions, the officer lacks the power to sell, and his sale lacks validity.

Sections 1801, 1802, 1803 and 1804, Revised Statutes 1899, cited by defendants, relate to loans of sinking funds and not to loans of school funds, and therefore have no relevancy to the case before us.

So far as concerns the case of Cole County v. Madden, 91 Mo. 585, it does not resemble the one in hand, as will readily be seen by reference thereto. There, accident, mistake and misapprehension were coupled with inadequacy of price, and no deed had passed to the purchaser, and the petition to set aside the sale was filed within six days after the sale occurred. A motion to set aside the sale in that court would have accomplished all that was necessary.

In this case, there is no fraud or other inequitable circumstance stated, only that of inadequacy of price. As to that, this court has so often decided that it alone constitutes no ground in equity for setting aside a sale of land, that precedents need no citation.

The case of Massey v. Young, 73 Mo. 270, bears no resemblance to the one before us; for that case reeked with fraud, both alleged and proved.

As to the fact that the sheriff failed to notify McPherson of the intended sale, he being a non-resident of the county, it suffices to say that this was a mere irregularity and similar in its effects to a failure to publish a notice of sale under ordinary *fi fa.* [Young v. Schofield, 132 Mo. loc. cit. 668, and cas. cit.]

Recurring now to the sufficiency of the petition, its allegations plainly show that the plaintiffs have a plain, adequate

and complete remedy at law. Indeed, it has been held in a large number of instances that a petition seeking equitable relief must *affirmatively* show on its face by the statement of *facts* that the plaintiffs have no plain, adequate, and complete remedy at law. Such allegations of facts in the petition are *jurisdictional,* and their absence may be taken advantage of by the adversary party at any place or at any time or at any stage of the proceedings; or the court of its own motion without suggestion of counsel, or the point being pleaded, may raise the objection. This is the rule laid down by the Supreme Court of the United States and by the Supreme Courts of a number of States. [Drury v. Conner, 1 Har. & G. 229; Woodman v. Freeman, 25 Me. 561; Trimble v. McGee, 112 Ind. 307. And in this state, Humphreys v. Milling Co., 98 Mo. 542. See Story, Eq. Pl. (10 Ed.), section 473. See, also, Hoey v. Coleman, 46 Fed. Rep. 221.]

In this case, the invalidity of the sale and conveyance made by the sheriff are patent to ordinary observation. No title passed by reason of them. . Why then invoke equitable aid to undo that which is absolutely void? In this case the remedy by ejectment would have been ample, adequate and complete on the part of the individual plaintiff, or the county court by disregarding the supposed sale made without a particle of authority, could have strictly obeyed the provisions of section 9835, and have had made a sale that would have passed the legal and entire title of McPherson.

It is abundantly established in this court that where proceedings resulting in a sale are void on their face, there you are not entitled to equitable relief, because of that fact, but must try those remedies which the *law* affords. [Railroad v. Reynolds, 89 Mo. 146, and cas. cit.; Christian v. City, 127 Mo. 109; Stockton, Extr., v. Ransom, Admr., 60 Mo. loc. cit. 539; Michael v. City, 112 Mo. loc. cit. 614; Russell

v. Lumber Co., 112 Mo. 40.]

In Planet Property & Finan. Co. v. Railroad, 115 Mo. loc. cit. 619, BURGESS, J., said: "There is, however, an insurmountable objection to plaintiff's petition, and upon that ground, if no other, the demurrer was properly sustained; and that is, that plaintiff, admitting all of the allegations in the petition to be true, has a complete and adequate remedy at law for the injury sustained (Walker v. Railroad, 57 Mo. 275)."

For the reason that the petition shows on its face that no reason existed for invoking equitable relief, the judgment holding the petition insufficient will be affirmed.   All concur.