MISSOURI POWER & LIGHT COMPANY, A CORPORATION, APPELLANT, v. LEWIS COUNTY RURAL ELECTRIC COOPERATIVE ASSOCIATION, A CORPORATION, RESPONDENT.—149 S. W. (2d) 881.

St. Louis Court of Appeals. Opinion filed April 8, 1941.

Motion for Rehearing Denied April 22, 1941.

*E. M. Jayne* and *Balfour S. Jeffrey* for appellant.

*Stockard & Stockard, Alden A. Stockard* and *Walter Hilbert* for respondent.

HUGHES, P. J.—This is an injunction suit instituted in the Circuit Court of Lewis County, and afterwards transferred to the Circuit Court of Marion County on change of venue. The appeal is from a judgment dismissing relator's second amended petition; the judgment being rendered as a final judgment after the court had sustained a general demurrer to relator's second amended petition and after relator had declined to amend or plead further.

The second amended petition, omitting caption and signatures, is as follows:

"Comes now the plaintiff and alleges and states that it is a corporation, duly organized and existing under and by virtue of the laws of the State of Missouri, with its principal place of business at Jefferson City, Missouri, and as such corporation is and has been at all of the times material hereto, and for many years, engaged in furnishing electric service and energy by central station system to others within the State of Missouri, including particularly consumers in certain cities and towns and rural territory of Lewis County, Missouri, as a public utility and public service corporation, subject to the Public Service Commission Law of the State of Missouri, and the rules, regulations and orders issued pursuant thereto by the Public Service Commission of that State; that the plaintiff is duly authorized by the Public Service Commission and the laws of the State of Missouri to engage, and it is engaging thereunder, in the public utility business of furnishing electric energy and service within said Lewis County and the rural areas thereof, including electric service to the Lewis County Home located on Missouri State Highway No. 96 between Lewistown and Monticello in Lewis County and about two miles east of Lewistown and in the aforesaid rural territory of Lewis County, which plaintiff has for many years so furnished with central station service of electricity.

"That defendant is a corporation organized and existing under and by virtue of the provisions of Article 29, Chapter 87, of the Revised Statutes, 1929, of the State of Missouri, with its principal place

of business located at Lewis County, Missouri, for the purpose of generating, purchasing, transmitting, distributing, furnishing and selling electric energy within the State of Missouri, and particularly in Lewis County, Missouri, with power to borrow from the United States of America or any agency or instrumentality thereof, including the Reconstruction Finance Corporation and the Rural Electrification Administration, money necessary for the acquisition or construction of an electric generation and distribution system or for any of defendant's other objects or purposes.

"That defendant did heretofore, the exact date being unknown to plaintiff, apply for a loan to the Federal Rural Electrification Administration and thereafter receive from said Administration under and by virtue of the Rural Electrification Act of 1936 as enacted by the Congress of the United States, a loan for the purpose of furnishing electric energy and service to persons in rural areas not receiving central station service; that said Rural Electrification Act prohibited the use of any Federal funds loaned thereunder for the furnishing of electric energy to persons in rural areas who are receiving central station service; that the Rural Electrification Administration and its administrator has established under said act rules and regulations prohibiting the use of Federal funds for the purpose of furnishing electric energy to persons who are receiving central station service; and that such limitation of statute and rules and regulations on the use of such public funds so loaned is for the purpose of protecting the existing service and business of electric public utilities including the plaintiff; that defendant accepted such loan and has constructed its electric system with the monies therefrom and subject to the provisions of said Rural Electrification Act; that by virtue thereof, defendant is without the right, power or authority to sell or furnish electric current to any person or corporation receiving central station service, and particularly is without the right, power or authority to sell or furnish electric current to the County Home of Lewis County, Missouri, and is authorized to furnish service only to persons in rural areas who are not receiving central station service. That defendant's right to furnish electric service through use of such funds is limited for service to persons not receiving central station service.

"Plaintiff further alleges that it has for many years past furnished and is now furnishing electric energy and service from a central station system operated and maintained by it to the County Home of Lewis County, Missouri, an institution maintained by said county in the rural area so being served by plaintiff, all in accordance with authorities granted to plaintiff under the laws of Missouri and the rules and regulations and orders of the Missouri Public Service Commission, and under a certificate of convenience and necessity issued by such commission, and that plaintiff has expended large sums of money in building lines and furnishing equipment to make

its electric service available to such County Home and to connect its Central Station system to such County Home; that at all of said times, said Lewis County Home has been receiving electric energy from plaintiff's central station service and plaintiff is now ready, able and willing to continue to furnish such electric energy and service to said Home, but that notwithstanding, the defendant had, at the institution of this suit, undertaken and now threatens and intends, unless restrained by this court, to provide and furnish electric current, energy and service to said Lewis County Home, all in violation of the Rural Electrification Act of 1936, and applicable rules and regulations of the Rural Electrification Administration and its Administrator, and in violation of plaintiff's rights. That this court heretofore granted plaintiff herein a temporary restraining order to prevent defendant from so acting pending a trial of this cause.

"Further complaining, plaintiff alleges and states that defendant is engaged in furnishing electric current and service to persons in rural areas in certain counties in Missouri, and particularly the rural areas of Lewis County, including those areas which the plaintiff under certificates and orders of the Public Service Commission of the State of Missouri is so serving as a public utility. That defendant has at all times material hereto, and is now, holding itself out to serve any and all persons or corporations within the rural areas of its operations, and has professed to and at all times since its organization has offered to serve any member of the public within the rural areas of its operation, including the County Home of Lewis County, Missouri, and other persons now receiving central station service from plaintiff; that defendant is in truth and in fact operating and conducting a public utility business as an electrical corporation within the rural areas of its operation, and particularly in Lewis County, and is subject to the Missouri Public Service Commission law, but that despite such facts it has failed, neglected or refused to submit to the jurisdiction of the Public Service Commission of Missouri or to apply for authority from said Commission to construct its electric plant or to furnish service therefrom or in any way to so operate as required under the laws of Missouri; that the defendant does not now possess such authority to furnish electric service or to construct its plant within Lewis County, Missouri, or in any other county in the State of Missouri; that defendant's operation is illegal and in violation of the laws of the State of Missouri, and by reason thereof plaintiff is being threatened with and subjected to unlawful competition in the conduct of its business.

"And further by reason of defendant's aforesaid unlawful acts and threats, all in violation of the laws of the United States and the State of Missouri, and each of them, this plaintiff is and will be irreparably damaged in that it will lose said home as a customer and the attendant revenue therefrom which it has heretofore been deriving

and would receive, and the sums so expended in building lines and furnishing equipment to make its electric services available to said home will be lost, unless defendant is restrained and enjoined by this Court; and defendant has and will illegally cause a serious infringement of the rights of this plaintiff to lawfully conduct its business within the State of Missouri, and particularly Lewis County; will illegally injure plaintiff's business and property and the value and revenue therefrom by depriving plaintiff of a customer and sale of its service on account of unlawful competition because of all of the facts hereinbefore alleged; that plaintiff has no complete or adequate remedy at law and defendant cannot be made to respond in damages.

"Wherefore, plaintiff prays that defendant be restrained and enjoined from providing electrical current and energy or service to said County Home of Lewis County, that the temporary restraining order herein be made permanent, and for such other and further relief in the premises as may be equitable and just."

In determining the question of whether the petition stated facts sufficient to constitute a cause of action, we must be guided by and treat as true the facts well pleaded in the petition. [State ex rel. v. Ridge, 138 S. W. (2d) 1012.] However, such rule is limited to the ultimate, constitutive facts and not to legal conclusions of the pleader nor to evidential or mere probative facts. [Hughes v. State Board of Health, 137 S. W. (2d) 523; State ex rel. Ashauer v. Hostetter, 344 Mo. 665, 127 S. W. (2d) 697.]

The position that relator takes here is that there were two separate and distinct grounds set up in the petition as to why the respondent should be enjoined from serving electricity to the Lewis County Home, i. e. (1) Because the Rural Electrification Act of Congress prohibited the use of Federal funds to give electric service to those already receiving central station service and because, as alleged in the second amended petition, this prohibition was inserted in the law for the purpose of protecting the business of appellant and others engaged in furnishing electric current to the public, and, (2) Because the respondent was, in fact, doing a public utility business without complying with the provisions of the Public Service Commission Law of the State of Missouri as to obtaining a certificate of convenience and necessity or otherwise bringing itself under the jurisdiction of the Public Service Commission of Missouri.

However, after the appeal was taken in this case the Supreme Court of Missouri handed down its opinion in the case of State ex rel. v. Ridge, 138 S. W. (2d) 1012. That case was an original action in prohibition wherein the relators challenged the jurisdiction of the circuit court in an injunction case whereby the Kansas City Power & Light Company, as plaintiff, were seeking to enjoin Joseph C. and Mary Cirese, doing business as Cirese Power & Light Company, from selling electric current without a city franchise and without a cer-

tificate of public convenience and necessity issued by the Public Service Commission as required by section 5193, Revised Statutes 1929 (Mo. Stat. Ann., sec. 5193, p. 6617). The Supreme Court held that the demurrer admitted that the defendants in the injunction suit were operating a public utility, and, therefore, inasmuch as they were operating a public utility, the Public Service Commission had jurisdiction of the subject-matter of the petition for injunction and not the circuit court. The Supreme Court quoted with approval from the case of State ex inf. v. Kansas City Gas Co., 254 Mo. 515, 541, 163 S. W. 854, 860, as follows:

"We stated 'that he who reads it (Public Service Commission Law), and does not see that the yearning of the lawmaker was to have the courts trust the Commission in the first instance to solve such business problems as those presented in this case, reads it to still less purpose.' In substance, we have so stated in many opinions."

In this case as in the Ridge case, *supra,* the demurrer admitted that the defendant was operating a public utility, as the petition charged. Relator seeks to escape the ruling in the Ridge case, *supra,* by now saying that the appeal in this case has to do solely with its first above mentioned point. We do not think so. If for any good and sufficient reason appearing at the time, the court was justified in sustaining a general demurrer to relator's petition, that reason cannot be brushed aside or ignored on relator's appeal from such ruling of the court. It is as much in the case now as it was then. For aught that appears that may have been the reason the court sustained the demurrer, and if that was a sufficient reason we could not and would not convict the court of making an erroneous ruling because mayhap the ruling could not have been based on some other parts of plaintiff's petition.

We are also unable to agree with the construction that relator's counsel places on the Rural Electrification Act of 1936 (7 U. S. C. A., sec. 901 et seq., pp. 378-384), to the effect that it is illegal for a corporation, such as defendant is, to sell electric current to a person in a rural area who, at the time such corporation obtained a loan under said Act, was receiving central station service from some other source. The applicable provisions of the Act are as follows:

"Sec. 2. The administrator is authorized and empowered to make loans in the several States and Territories of the United States for rural electrification and the furnishing of electric energy *to persons in rural areas who are not receiving central station service,* as hereinafter provided; to make, or cause to be made, studies, investigations, and reports concerning the condition and progress of the electrification of rural areas in the several States and Territories; and to publish and disseminate information with respect thereto. (Italics ours.)

"Sec. 4. The administrator is authorized and empowered, from the sums hereinbefore authorized, to make loans to persons, corporations . . . and cooperative, nonprofit, or limited dividend associations, organized under the laws of any State or Territory of the United States, for the purpose of financing the construction and operation of generating plants, electric transmission and distribution lines or systems for the furnishing of electric energy *to persons in rural areas who are not receiving central station service*: Provided, however, that the administrator, in making such loans, shall give preference to States, . . . and cooperative, non-profit, or limited dividend associations, the projects of which comply with the requirements of this Chapter." (Italics ours.)

That it was the intention of Congress that the administration of the law should be such as not to aid any applicant for a loan whose project plan was primarily to compete with a central service station already occupying the area and adequately furnishing electric current to all in that area who sought it, there could be no doubt, else the words would be meaningless, i. e., "persons in rural areas who are not receiving central station service." Undoubtedly it was the intention that the administrator, before approving a loan, would make investigation of the objects and purposes of the borrower, and the needs of the people in the area for adequate electrical service, and to eliminate from the application and project plan all persons who were receiving central station service, and to decline the loan if the area was being adequately served, or if the object and purpose of the borrower was to engage in competition with an established central station in that area. But it would be a far strained construction, and to a great extent inimical to the very object and purpose of the law, to say that because some central station was serving one or more isolated homes of its own choosing in a given area, that the many others of that area could not organize as this defendant did and procure a loan for the purpose of equipping their organization to sell electric current to whomsoever might seek to buy it; and then to further say that after such an organization or corporation was properly and legally created and had, in conformity with the law, procured a loan through the R E A, that it would be thereafter precluded from furnishing electric current to anyone who at the time of its organization had been receiving central station service from another source, and desired to make a change, would be placing a construction on the R E A that we do not believe was ever intended.

If such had been the purpose of the lawmakers they would have most likely provided that the area of the borrower be fixed within certain limits, and the borrower limited in its operations to that area, and all others selling electric current be excluded. For obvious reasons that was not the purpose. We think it more likely that the lawmakers foresaw a situation like we have here, where the area of

the borrower and that of some central station selling electric current might overlap to at least some extent, and in such case the borrower in its application for a loan could not qualify by counting in its project plan a person or persons already receiving service nor even count such person or persons as potential patrons; but after the loan was made there would be no possible way of preventing legitimate competition between the two service stations as to new patrons or as to the extent that a dissatisfied patron of either service would have the right to quit the one and buy from the other. The very fact as alleged in the petition that both relator and respondent are incorporated for the purpose of selling electric current within the State of Missouri, would make them potential competitors. Under their corporate powers, as alleged in the petition, either and both had a right to sell electric current in Missouri and in Lewis County. The lawmakers must have foreseen that just such situation as here would present itself in many sections of the country, and they had no intention of regulating or restricting the business operations of a borrower after the making of a loan. We think the qualifying words "to persons in rural areas who are not receiving central station service" have reference to the time of the application for the loan, and if at that time the borrower's express or ostensible purpose was competitive, the loan would be refused; but if at that time the borrower complied with the law, and in this case it is not claimed that it did not, the fact that its business thereafter became competitive with others engaging in like business would not make such business unlawful.

It has been definitely adjudicated that one in the situation of relator would have no right to an injunction restraining the making of the loan by the R E A because of its fear of legitimate competition. In the case of Alabama Power Co. v. Ikes, 302 U. S. 464, 479, the Supreme Court said:

"If conspiracy or fraud or malice or coercion were involved a different case would be presented, but in their absence, plainly enough, the mere consummation of the loans and grants will not constitute an actionable wrong. Nor will the subsequent application by the municipalities of the moneys derived therefrom give rise to an actionable wrong, since such application, being lawful, will invade no legal right of petitioner. The claim that petitioner will be injured, perhaps ruined, by the competition of the municipalities brought about by the use of the moneys, therefore, presents a clear case of *damnum absque injuria*. Stated in other words, these municipalities have the right under state law to engage in the business in competition with petitioner, since it has been given no exclusive franchise. If its business be curtailed or destroyed by the operations of the municipalities, it will be by lawful competition from which no legal wrong results."

To the same effect is the case of Arkansas-Missouri Power Corp. v. City of Kennett (Mo.), 113 F. (2d) 595.

It is apparent from a mere reading of relator's petition that the real gravamen of its complaint is an endeavor to forestall or prevent legitimate competition, as in the Ikes case, *supra*.

The judgment of the circuit court should be affirmed. It is so ordered. *McCullen* and *Anderson, JJ.,* concur.

### ON MOTION FOR REHEARING.

HUGHES, P. J.—The demurrer to plaintiff's petition which was sustained by the circuit court was, as we stated in our opinion, a general demurrer alleging that the petition did not state facts sufficient to constitute action. Appellant now contends for the first time that such demurrer was not sufficient to reach respondent's claim that inasmuch as the petition alleged that respondent was subject to the Missouri Public Service Commission Law, and such fact being admitted by the demurrer, therefore the petition on its face shows that appellant has an adequate remedy at law. In an action for injunction a demurrer on the ground that a bill does not state facts sufficient to constitute a cause of action is sufficiently broad to raise the question that plaintiff has an adequate remedy at law appearing upon the face of the petition itself. [Planet P. & F. Co. v. Railroad, 115 Mo. 613; McKee v. Allen, 204 Mo. 655, 674; Kemper v. Gluck, 21 S. W. (2d) 922; Lampson et al. v. New Cole County B. & L. Ass'n, 106 S. W. (2d) 911.]

The cases now cited by appellant and with which it claims we are in conflict have no bearing on this question and are not in point. In the case of Water Co. v. City of Aurora, 129 Mo. 540, it was held that a petition which defectively states a cause of action is good on general demurrer. In the instant case there was no question of a cause of action defectively stated, but the question was whether the petition on its face showed that plaintiff had an adequate remedy at law. This is fully answered by the opinion in the case of State ex rel. v. Ridge, 138 S. W. (2d) 1012.

The next case cited is Eads v. Gains, 58 Mo. App. 587, in which it is held that a demurrer to a petition does not reach any defects, imperfections or uncertainty in the pleading, provided a cause of action may be implied from its allegations by reasonable and fair intendment. That case is far afield from holding that where an adequate remedy at law expressly appears in the petition, that the court will not so hold on general demurrer.

The other case cited is Nodaway County v. Tilson, 129 S. W. (2d) 915, wherein it is held that a general demurrer did not challenge the validity of a summons issued by the deputy clerk. That certainly has no bearing on the question in this case. It has always been ruled that a demurrer only reaches matters appearing on the face of the petition.

What we said in the opinion and what we again say is that if for any good and sufficient reason (such as the petition showing on its face an adequate remedy at law) the court was justified in sustaining a general demurrer to relator's petition, that reason cannot be brushed aside or ignored on relator's appeal from such ruling of the court.

Other matters referred to in the motion for rehearing are fully covered by the opinion and after careful consideration we are of the opinion that appellant's motion for rehearing is without merit and should be denied. It is so ordered. *McCullen* and *Anderson, JJ.,* concur.