STATE EX REL. OFFICE OF CIVILIAN DEFENSE SALVAGE COMMITTEE, CITY OF CARTHAGE, JASPER COUNTY, ET AL., RESPONDENTS, v. JACK HORNER ET AL., APPELLANTS.—187 S. W. (2d) 976.

Springfield Court of Appeals. May 2, 1945.

Rehearing denied June 5, 1945.

788

Roy Coyne, Elza Johnson and R. A. Mooneyham for appellants.

*H. Tiffin Teters, R. A. Esterly,* and *Herbert Van Fleet* for respondents.

FULBRIGHT, P. J.—This is a proceeding by injunction wherein plaintiffs seek to restrain and enjoin defendants, without notice, from disposing of, in any manner, certain funds deposited in defendant bank other than to the Mo Kan Area Council of Boy Scouts of America, Inc. To plaintiffs' petition defendants filed their demurrer

and for reasons therefor alleged in substance a misjoinder of parties plaintiff, that none of the plaintiffs have any right, title or interest in the subject-matter of the suit and that the petition shows on its face that injunction will not lie. The demurrer was overruled and defendants elected to stand thereon, refusing to plead further. The court rendered judgment for plaintiffs as prayed for in their petition and defendants duly appealed to the Supreme Court. Thereafter said cause was transferred by that Court to the Springfield Court of ·Appeals for the reason that the Supreme Court was without jurisdiction.

It is· conceded that the main question for this court to decide is whether or not plaintiffs' petition states a cause of action. Omitting caption and signatures the petition reads as follows:

(1) ''Plaintiffs state that the Civilian Defense Salvage Committee of the City of Carthage, Jasper County, Missouri, is an agency and political division of the State of Missouri, authorized, maintained and supported by the State of Missouri, and that plaintiffs, J. L. Bridges, H. L. Hutchison and Glenn Metcalf are the present authorized and duly acting members of the Carthage, Jasper County, Missouri, Civilian Defense Scrap Salvage Committee duly appointed by the Mayor of the City of Carthage at the request of the Governor of the State of Missouri, and that the plaintiff J. Madison Owen and Defendant Jack Horner were at times hereinafter set out members of the committee aforesaid; that the City of Carthage, Missouri, as a municipal Corporation duly organized under the laws of the State of Missouri under the statutes thereof relating to cities of the third class; that the Mo Kan Area Council of Boy Scouts of America is a corporation duly organized and existing under the laws of the State of Missouri, with its principal offices located at Joplin, Missouri. That on the — day of October, 1943, under authority granted to him by the President of the United States and the Governor of the State of Missouri, Mayor J. C. Griggs of the City of Carthage appointed a Carthage Scrap Salvage Committee composed of defendant Jack Horner and plaintiffs J. Madison Owen and Glenn Metcalf; that said appointments were duly approved by the City Council of the City of Carthage; that pursuant to said appointment and the purposes set forth for the activity of said committee by the President of the United States and the Governor of the State of Missouri and Mayor aforesaid and the City of Carthage, said Salvage Committee proceeded to collect and market scrap iron, steel, rubber and other salvage for the principal purpose of aiding the war effort; that said proceeds therefrom were turned to the Chairman of said committee, defendant Jack Horner, to the amount of $615.

(2) ''That thereafter at a meeting held by said committee which was attended by all the members thereof, it was decided by the ma-

jority of said members that said funds should be disposed of as follows, to-wit:

"To the Carthage Chapter of the United Service Organizations for blankets, .............................. $75.00

"To the Carthage Chapter of the American Red Cross for surgical dressings, .............................. 25.00

"To the Civilian Defense Council Committee for trip to Springfield, Missouri, .......................... 15.00

"To the Carthage Chapter of the Girl Scouts of America, .. 75.00

(3) "And the balance of said fund to be paid to the Carthage District of the Mo Kan Area Council of Boy Scouts of America, Inc., in the sum of $425 with the recommendation that said fund be used if feasible to provide a camping trip for Scouts of the Carthage District. That said meeting wherein the aforesaid disbursements were authorized as herein set forth in the Council Chambers of the City of Carthage, Missouri, on the 29th day of December, 1942. That upon the receipt of the aforesaid sum of $615 by the defendant Jack Horner as chairman of the Committee aforesaid, said sum was placed in his private account in the Bank of Carthage, Inc., a banking institute duly organized and existing under the laws of the State of Missouri, and located in Carthage, Missouri, and from said private bank account, the defendant, Jack Horner, thereafter disbursed to the Carthage Chapter of the United Service Organization for blankets the sum of $75; to the Carthage Civilian Defense Committee for trip to Springfield, Mo., the sum of $15; for the Carthage Chapter of the American Red Cross for surgical dressings, the sum of $25; to the Carthage Chapter of the Girl Scouts of America the sum of $50, not disbursing the full $75; but failed, refused and neglected to disburse any part or all of the said $425 allocated and granted by the majority of the aforesaid committee to the Carthage District of the Mo Kan Area Council of the Boy Scouts of America, Inc.

(4) "That thereafter, on or about the — day of January, 1943, the said J. Madison Owen resigned from said committee and was replaced thereon by the plaintiff H. L. Hutchison and thereafter defendant Jack Horner was removed from said committee and was succeeded by the plaintiff, J. L. Bridges.

(5) "That during the month of January or February, 1943, the exact date of which is unknown to the plaintiffs, defendant Jack Horner without the knowledge, authorization, consent or approval of the majority of the Salvage Committee aforesaid, did allegedly enter into a Trust Agreement whereby the aforesaid sum of $425 was allegedly transferred and conveyed to the defendants, Jack Horner, Wiggo E. Jensen and Orville D. Knight, as alleged and purported trustees for the purpose of holding and spending said monies for the use and benefit of individual boys and not for the use and benefit of the Mo Kan Area Council of the Boy Scouts of America, Inc., other

terms and conditions of said trust agreement being unknown to the plaintiffs herein.

(6) "That in the solicitation of the aforesaid scrap and salvage, said scrap and salvage was obtained from the citizens of the City of Carthage and Jasper County, Missouri, upon the expressed assurances and conditions that any and all funds obtained from the sale thereof would be used for benevolent and charitable purposes and particularly for the use and benefit of the Boy Scouts of the Carthage District aforesaid.

(7) "That prior and subsequent to the alleged trust agreement aforesaid and upon numerous occasions, demands were made upon the defendant Jack Horner by the plaintiffs herein for payment of the aforesaid sum of $425 to the Carthage District of the Mo Kan Area Council, Boy Scouts of America, Inc., in accordance with the decision of the Scrap Salvage Committee as hereinbefore set forth but nevertheless the said defendant, Jack Horner, failed and refused to pay or deliver the sum aforesaid or any part thereof and still fails and refuses to pay the aforesaid sum thereof as directed and said sum still remains on deposit in the said Bank of Carthage in the private account of the said defendant, Jack Horner, according to the best knowledge and belief of these plaintiffs.

(8) "That on the 13th day of July, 1943, it came to the knowledge of the plaintiffs herein that the defendant Jack Horner, Wiggo Jensen and Orville Knight, individually or as alleged trustees under the alleged purported trust agreement aforesaid proposed, threatened, expect and contemplate the expenditure of the aforesaid $425 on individuals or the disbursement to individuals other than the Carthage District of the Mo Kan Area Council of the Boy Scouts of America, Inc., as directed by the committee aforesaid and said proposed, purported and contemplated expenditure will completely exhaust the aforesaid sum of $425 and said sum will be diverted to other and improper uses and said plaintiffs herein will suffer irreparable damage by the aforesaid threatened misappropriation or by the conversion of the funds for the use of the defendant Jack Horner or others unlawfully or illegally entitled thereto and unless said expenditure of said money is enjoined by this court the said plaintiffs will not have and enjoy the use and benefit thereof for the purposes directed by the committee aforesaid and for the purpose the said scrap salvage was collected and sold and that plaintiffs have no adequate remedy at law. That the need for an injunction or restraining order is immediate for the reasons hereinbefore set forth and unless the same is granted without notice to the defendants herein, the plaintiffs will suffer irreparable damage.

(9) "WHEREFORE, plaintiffs pray that the defendants be enjoined and restrained without notice thereto from disbursing or pay-

ing out or in any manner disbursing the aforesaid sum of $425 either as individuals or as alleged trustees under the alleged trust agreement to any person or individual other than the Carthage District of the Mo Kan Area Council of the Boy Scouts of America, Inc., and that the defendant, Bank of Carthage, be ordered and authorized to hold said funds of the defendant or defendants in its hands intact and to honor no checks, drafts or orders drawn on said fund and that this said court determine, adjudge and decree that the said monies shall be paid to the Mo Kan Area Council of the Boy Scouts of America, Inc., and to no other person, corporation, or association and for such other and further relief in the premises as the plaintiffs may in equity be entitled to.''

It will be observed that ''Courts of equity are not invested with power to enjoin in any and every case, but there must be some special circumstance bringing the case under some recognized heading of equity jurisdiction before it will wield the powerful writ of injunction.'' [State ex rel. v. Wood, 56 S. W. 474, 155 Mo. 425; State ex rel. v. Cook, 136 S. W. (2d) 142, 234 Mo. App. 898.]

From a careful reading and study of the petition in the instant case it is obvious that plaintiffs seek relief on the alleged ground of a constructive trust; that they will suffer irreparable damage unless defendants are enjoined and that they have no adequate remedy at law.

Plaintiff insist that the ''Scrap Salvage Committee'' vigorously and diligently labored in behalf of the war effort in securing scrap of various kinds, a service laudible and patriotic, it is true. But this does not help us in determining the sufficiency of the petition as a foundation of a suit in equity. It is well settled that in passing upon the sufficiency of the bill that all facts well pleaded must be accepted as true as well as all inferences that may be fairly and reasonably drawn therefrom. But this is limited to the material facts alleged and not to legal conclusions of the pleader or to evidential or mere probative facts. [Missouri Power & L. Co. v. Lewis County R. E. Coop. Ass'n, 235 Mo. App. 1056, 149 S. W. (2d) 881; Hughes v. State Board of Health, 345 Mo. 995, 137 S. W. (2d) 523; Mary Muffett, Inc., v. Smelansky, 158 S. W. (2d) 168; Springer v. Security Nat. Bank Savings & Trust Co. (Mo.), 175 S. W. (2d) 797, l. c. 799.]

In paragraph five of the petition plaintiffs attempt to allege facts to show that the funds involved in this suit are held by certain defendants as trustees *ex maleficio* or trustees of a constructive trust. The paragraph in part alleges that ''Defendant Jack Horner, without the knowledge, authorization, consent or approval of the majority of the Salvage Committee aforesaid, did allegedly enter into a trust agreement whereby the aforesaid sum of $425 was allegedly transferred to the defendants Jack Horner, Wiggo E. Jensen and Orville D. Knight, as alleged and purported trustees for the purpose

of holding and spending said monies for the use and benefit of individual boys and not for the use and benefit of the Mo Kan Area Council of the Boy Scouts of America, Inc." The word "allegedly", as used here, can only mean according to an allegation or statement made by some person or persons not therein named. The petition does not charge that Jack Horner or any of the defendants in this suit entered into a trust agreement but that they *allegedly* did so. The plain meaning of the allegations in this paragraph is that plaintiffs had heard, or that somebody alleged or stated such facts, which amount to nothing more than hearsay or rumor. It does not charge that the $425, the subject-matter of this suit, was transferred to defendants herein as trustees, but that it was *allegedly transferred.* This allegation is wholly inconsistent with the statement made near the close of paragraph seven wherein it is stated: "Said sum still remains on deposit in the said Bank of Carthage in the private account of said Jack Horner," thus robbing the allegations as to a trust agreement and assignment of the funds to the trustees of any merit, if any they had. Such conflicting allegations are not to be considered. [Springer v. Security Nat. Bank Savings & Trust Co., *supra.*]

Nowhere is it alleged in the petition that Jack Horner wrongfully got possession of the money or that he or any of the defendants are now wrongfully in possession of same and that he or any of the defendants have profited in any manner by the possession or use of said funds. It is our conclusion, and we hold, that the facts pleaded are wholly insufficient to show the existence of a trust *ex maleficio* or a constructive trust and are not of sufficient gravity to entitle plaintiffs to equitable relief on that ground. Such statement of facts finds no support in the cases of Lucus v. Central Missouri Trust Co., 166 S. W. (2d) 1053; State ex rel. v. Johnson, 68 S. W. (2d) 858; State ex rel. v. Smith, 135 S. W. (2d) 355, and Ellenburg v. Edward K. Love Realty Co., 59 S. W. (2d) 625, upon which plaintiffs rely.

There are no facts pleaded in the petition which show in the remotest degree that plaintiffs will be irreparably damaged if not granted the relief prayed for. It is only a mere statement of the conclusion of the pleader. The petition does not affirmatively show on its face by the facts pleaded that plaintiffs have no adequate and complete remedy at law. Such allegations in the petition are jurisdictional and must be pleaded. [Benton County v. Morgan, 163 Mo. 661, 64 S. W. 119; Palmer et al. v. Marshall et al., 24 S. W. (2d) 229.]

From the foregoing observations we hold the petition fails to state a cause of action and that the demurrer should have been sustained. It is therefore unnecessary to consider other issues raised in the case. The judgment of the trial court is accordingly reversed. *Blair* and *Vandeventer, JJ.,* concur.